UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

JACK W. STOLLENWERK,
    Plaintiff,

v.                                     Case No. 2:11-CV-504-FtM-JES-DNF
MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

The Plaintiff filed an application for a period of disability and disability insurance benefits and Supplemental Security Income[1] on June 22, 2009, alleging disability beginning March 1, 2004 . This claim was denied initially and upon reconsideration. On November 19, 2010, a hearing was held in Fort Myers, Florida, before Administrative Law Judge M. Dwight Evans [Tr. 18]. On December 9, 2010, Administrative Law Judge Evans issued his decision denying Plaintiff's applications. [Tr. 10-18] The Appeals Council denied Plaintiff's Request for Review on July 27, 2011, [Tr. 1-6] making the ALJ's decision the final decision of the Commissioner. For the reasons set out herein, the decision is **AFFIRMED**.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

---

[1] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On June 22, 2009, Plaintiff filed his applications for disability insurance benefits and Supplemental Security Income alleging disability beginning March 1, 2004. The Decision of ALJ Evans dated December 9, 2010, denied Plaintiff's claim for benefits (Tr. 10-18). At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 1, 2004 (Tr. 10). At Step 2, the ALJ found that Plaintiff has the following severe physical impairments: history of a learning disability and generalized anxiety disorder (Tr. 12). At Step 3, the ALJ found that during the period in question, Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. At Step 4, the ALJ found Plaintiff was able to perform his past relevant work as a janitor

(Tr. 18). The ALJ determined Plaintiff's work as a janitor did not require the performance of work related activities precluded by Plaintiff's residual functional capacity, i.e., "... can perform a full range of work at all exertional levels, but may have occasional difficulty remembering, understanding and carrying out detailed instructions; interacting appropriately with the general public; and responding appropriately to changes in the work setting" (Tr. 14).

**Standard of Review**

The standard or scope of review governing this case is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's ultimate conclusions are legally correct under controlling law. See 42 U.S.C.§§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's factual findings are conclusive, if supported by substantial evidence. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). The court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005).

## II. REVIEW OF FACTS

Plaintiff was born on October 3, 1962, and was 48 years old at the time of the decision (Tr. 26) Plaintiff testified he attended special education classes but completed 12th grade and graduated from high school (Tr. 27). Plaintiff is insured for benefits through September 30, 2009 (Tr. 12).

Plaintiff's mother testified that she told the Plaintiff to apply for disability benefits because he has no income and no job that he is capable of doing. Plaintiff's mother stated that since birth, the Plaintiff has had motor function and comprehension difficulties. Plaintiff worked for thirteen years as a janitor and Plaintiff's mother testified that Plaintiff was given that job by his father who was the manager of the company (Tr. 15). Plaintiff remembers that he was laid off from that position. Plaintiff remembers working another janitorial position but he got into a dispute with the boss and resigned. Plaintiff was unable to remember any dates for either of these positions (Tr. 30, 31).

Plaintiff is able to complete his personal care, perform light household chores and prepare meals. Plaintiff takes out the trash and does yard work. Plaintiff has a driver's license and drives a car and a scooter (Tr. 16, 161-163). Plaintiff goes out, talks to friends and eats breakfast with the "regulars". Plaintiff volunteers with the Fort Myers Beach Emergency Response Team and has for several years. Plaintiff assists the fire department and EMS with first aid, CPR and disasters (Tr. 16, 44). The ALJ determined Plaintiff stopped working because he was laid off due to downsizing or relocating to Florida (Tr. 16-31).

The ALJ found that Plaintiff's "history of a learning disability and generalized anxiety disorder" were considered "severe" based on the regulatory requirements, but that these medically determinable impairments did not meet or medically equal one of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 12-14).

After careful consideration of the record, ALJ found that Plaintiff had the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels, but he may have occasional difficulty remembering, understanding, and carrying out detailed instructions; interacting appropriately with the general public; and responding appropriately to changes in the work setting (Tr. 14-18).

The ALJ concluded that with the aforementioned RFC Plaintiff was able to perform his past work as a janitor (Tr. 18). Therefore, the ALJ determined that Plaintiff was not under a "disability" as defined in the Social Security Act, from March 1, 2004, his alleged onset date, through December 9, 2009, the date of the decision (Tr. 18).

On October 25, 2010, Dr. Nicholas Anthony completed a "Questionnaire As To Mental Residual Functional Capacity Form." (Tr. 304-07). In completing the questionnaire, Dr. Anthony checked several boxes indicating Plaintiff had marked and extreme limitations, including extreme limitations in his ability to interact with supervisors, performing at a consistent pace, behaving reliably in an emotionally stable manner, and tolerating customary work pressures (Tr. 304-06). Dr. Anthony assessed a marked limitation in Plaintiff's ability to be aware of normal hazards (Tr. 306) and opined Plaintiff's condition was likely to deteriorate if he was employed noting "see previous work hx." (Tr. 307). Further, in a letter dated July 10, 2009, (To Whom It May Concern), Dr. Anthony wrote " Mr. Stollenwerk is not capable of holding gainful employment in a normal competitive work setting. He has

difficulty maintaining concentration, has limited problem solving capability" (Tr. 326). However, it is noted by the ALJ that Dr. Anthony opined Plaintiff was capable of managing his own funds (Tr. 307).

In January of 2008, Plaintiff was seen by Dr. Stanley Rabinowitz who noted "patient's memory was intact and the patient's appearance was appropriate". Plaintiff exhibited no behavioral difficulties during the interview and examination, was able to relate during the examination and would appear to be able to handle his own funds." (Tr. 224).

In June 2009, Plaintiff was seen by Dr. Vincent Azzara for a treatment visit. Plaintiff had no complaints and his mental status and neurologic examinations were within normal limits (Tr. 15, 229). Plaintiff alleged hypertension and hypercholesterolemia. All tests were within normal parameters, i.e., eyes, ears, nose, throat, blood work, etc.

On September 30, 2009, Dr. Pamela D. Green, a State agency psychological consultant, evaluated Plaintiff's mental functional capacity and opined that Plaintiff had some limitations but was nevertheless capable of simple, routine tasks ( Tr. 239). Dr. Green found Plaintiff would be able to understand and remember simple and routine instructions, be able to complete simple and routine tasks/work procedures, be able to make work decisions but might have difficulty maintaining attention and concentration for extended periods. Further, Plaintiff would be cooperative and socially appropriate but may have difficulty accepting criticism from a supervisor (Tr. 239).

Dr. Kevin Ragsdale, a State agency psychological consultant, evaluated Plaintiff's mental functional capacity on January 8, 2012, and opined that Plaintiff experienced mild to moderate functional limitations but "appears to still be capable of doing a number of cognitive and social activities important to maintaining some type of employment." (Tr.

280). Dr. Ragsdale found Plaintiff "may be best suited for work that does not require frequent social interaction. Participation in specialized mental health treatment may prove hopeful in terms of assisting the claimant in eventually strengthening and attaining better access to the existing vocational abilities and skills" (Tr. 280).

In August 2010, Dr. Azzara noted that Plaintiff was alert and cooperative and he had no impairment of recent or remote memory (Tr. 299). During a follow-up appointment for blood pressure and anxiety in September 2010, Dr. Azzara again noted that Plaintiff was alert and cooperative and he had no impairment of recent or remote memory (Tr. 297). Plaintiff's medication was reportedly working with no side effects (Tr. 296).

**III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A. THE ALJ FAILED TO GIVE WEIGHT TO THE OPINION OF DR. NICHOLAS ANTHONY, PLAINTIFF'S TREATING PSYCHOLOGIST AND FAILED TO MENTION DR. MARK WAGNER, A NEUROPSYCHOLOGIST IN THE DECISION**

Plaintiff contends the ALJ erred by failing to give controlling weight to Plaintiff's treating physician, Dr. Nicholas Anthony and by failing to discuss Dr. Mark Wagner, a neuro psychologist's opinion.

Dr. Anthony's opinion is inconsistent with Plaintiff's reported daily activities. As the ALJ found, Plaintiff can complete his personal care (Tr. 16, 162). He can perform light household chores and prepare meals (Tr. 16, 163). Plaintiff takes out the trash and does yard work (Tr. 16, 161, 163). He can drive a car and a scooter (Tr. 16, 164). He talks to friends and the regulars where he eats breakfast and has a snack daily (Tr. 16, 165). Plaintiff goes out

alone on a daily basis more than once a day (Tr. 16, 161). The ALJ as the trier of fact properly found that there was no evidence that Plaintiff required around the clock assistance for daily living and the evidence supported the fact that he functions quite independently (Tr. 16). In fact, at the time of the ALJ's decision Plaintiff had been volunteering with the Fort Myers Beach Emergency Response Team for two years and he attended monthly meetings concerning his volunteer work (Tr. 16, 44). He helped the fire department and EMS with first aid, CPR, and disasters (Tr. 16, 44). Moreover, Plaintiff stopped working because he was laid off due to downsizing or relocating to Florida not due to his conditions (Tr. 16, 31).

The ALJ properly determined that Dr. Nicholas Anthony's opinion was entitled to little weight because it was inconsistent with his treatment notes, Plaintiff's work history, and Plaintiff's reported daily activities, and it was based primarily on Plaintiff's subjective complaints (Tr. 15-17).

The Eleventh Circuit has held that a treating physician's opinion is not entitled to controlling weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Substantial evidence supports the ALJ's decision to give little weight to Dr. Anthony's opinion.

The ALJ's decision is also supported by the assessments of the non-examining state agency psychologists, Dr. Pamela Green and Dr. Kevin Ragsdale (Tr. 237-39, 278-80). 20 C.F.R. §§ 404.1512(b)(8). Dr. Green evaluated Plaintiff's mental functional capacity on September 30, 2009, and opined that Plaintiff had some limitations but was nevertheless

-8-

capable of simple, routine tasks ( Tr. 239). Dr. Ragsdale evaluated Plaintiff's mental functional capacity on January 8, 2012, and opined that Plaintiff experienced mild to moderate functional limitations but "appears to still be capable of doing a number of cognitive and social activities important to maintaining some type of employment." (Tr. 280).

Plaintiff further argues that the ALJ erred in not discussing Dr. Wagner's opinion and in not giving the opinion controlling weight. (Pl.'s Br. at 18-21). Although Dr. Wagner examined Plaintiff over a two day period as part of the "Neuropsychological/ Vocational Evaluation," Dr. Wagner is not a treating physician as defined in the regulations. A treating source is an acceptable medical source "who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902. As stated above, Plaintiff was seen by Dr. Wagner twice for the purpose of completing a single evaluation. Accordingly, Dr. Wagner was not a treating physician and his opinion was not entitled to any special deference. 20 C.F.R. §§ 404.1502, 404.1527(d)(1), (2), 416.902, 416.927(d)(1), (2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

To the extent the ALJ erred in failing to specifically discuss Dr. Wagner's opinion, this error is harmless because Dr. Wagner's opinion does not relate to the period under consideration, and even if his opinion did relate to the relevant period, his opinion does not contradict the ALJ's finding that Plaintiff could return to his past work. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in a Social Security appeal). Dr. Wagner's opinion was from over a year prior to Plaintiff's alleged onset date, and although his

intelligence testing results would not necessarily change, factors such as Plaintiff's effort and motivation could have changed. Additionally, although Dr. Wagner indicated that Plaintiff was limited, Dr. Wagner did not rule out work activity such as the work Plaintiff previously performed (Tr. 323). Thus, Dr. Wagner's opinion is not inconsistent with the ALJ's finding that Plaintiff could perform his past work.

      B.      **THE ALJ WAS NOT REQUIRED TO CONSULT WITH A VOCATIONAL EXPERT BEFORE DETERMINING THAT PLAINTIFF COULD RETURN TO HIS PAST WORK AS A JANITOR**

Plaintiff's argument regarding the Medical-Vocational Guidelines and the need for a vocational expert is inapplicable in this case because the ALJ found Plaintiff could return to his past work and did not rely on the Medical-Vocational guidelines (Pl.'s Br. at 22-23).

An ALJ may rely solely on the "DOT" to determine that a claimant can return to his past relevant work. 20 C.F.R. §§ 404.1560(b), 416.960(b); SSR 82-61. The ALJ determined that Plaintiff could perform work at all exertional levels but "may have occasional difficulty remembering, understanding, and carrying out detailed instructions; interacting appropriately with the general public; and responding appropriately to changes in the work setting." (Tr. 14). The ALJ elaborated on his "RFC" finding by stating that Plaintiff "is capable of performing simple, routine tasks." (Tr. 18).

The janitor position identified by the ALJ is an unskilled position with an SVP of 2. U.S. Dep't of Labor, DOT, § 381.687-014 (cleaner, commercial or institutional), 1991 WL 673257 (4th ed. 1991). Social Security Ruling 00-4p addresses the relationship between SVP time and skill level definitions and explains that unskilled work corresponds to an SVP of 1-2. SSR 00-4p. Implicit in the definition of unskilled work is the requirement that the

work require only the ability to understand, remember, and carry out simple instructions. Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Unskilled work involves understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. SSR 96-9p.

The ALJ properly determined that Plaintiff, who was capable of performing simple, routine tasks, could perform his past work as a janitor. Plaintiff failed to prove that he was unable to perform his past relevant work.

### C. THE ALJ DID NOT GIVE SPECIFIC REASONS FOR ACCEPTING OR REJECTING THE MOTHER'S TESTIMONY

The ALJ properly considered Plaintiff's mother's testimony.[2] Plaintiff's mother testified that she told the claimant to apply for disability benefits because he has no income and no job that he is capable of doing. Ms. Stollenwerk reported that the claimant worked for 13 years, but his father got him the job. The ALJ found that "there is no substantial evidence of record to support the allegation that the claimant worked with his father and was given special considerations due to his impairments aside from the testimony provided by him and his mother. In addition, the claimant did not always work with his father and held jobs on his own" (Tr. 16, 17). The ALJ did consider the Plaintiff's mother's testimony.

---

[2] Plaintiff cites *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990), and states that the Eleventh Circuit has remanded a case in which the ALJ's decision did not review the testimony of the claimant's daughter and neighbor and did not give reasons for rejecting it. (Pl.'s Br. at 25). Unlike in *Lucas*, the ALJ in this case specifically discussed Plaintiff's mother's testimony (Tr. 15).

The Commissioner also notes that in a recent unpublished Eleventh Circuit decision, the court explained that "[e]ven if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 F.App'x 654, 666 (11th Cir. 2006).

It is implicit in the ALJ's discussion of the evidence, his rejection of Plaintiff's subjective complaints, and his rejection of Dr. Anthony's opinion, that the ALJ rejected Plaintiff's mother's testimony. Plaintiff failed to meet his burden of providing evidence to support his allegations of disabling limitations. 42 U.S.C. §§ 423(d)(5)(A), 1382c(H)(i); 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c).

In the instant case, the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 10-18).

## IV.  CONCLUSION AND RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the decision of the Commissioner be *AFFIRMED*.  Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Jack W. Stollenwerk v. Commissioner

2:11-cv-504-FtM-JES-DNF

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 17th day of May, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record
All Counsel of Record